UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OLBAN ROBERTO ERAZO ACOSTA,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, Secretary of the Department of Homeland Security, et al.,<br><br>Respondents. | Case No.:  26-CV-3492 JLS (MMP)<br><br>**ORDER GRANTING AMENDED PETITION FOR WRIT OF HABEAS CORPUS**<br><br>(ECF No. 6) |

Presently before the Court is Petitioner Olban Roberto Erazo Acosta's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Pet.," ECF No. 6).  Also before the Court is Respondents' Return to Habeas Petition ("Ret.," ECF No. 8) and Petitioner's Traverse ("Traverse," ECF No. 9).  For the reasons set forth below, the Court **GRANTS** Petitioner's Amended Petition for Writ of Habeas Corpus (ECF No. 6).

## BACKGROUND

Petitioner is a native and citizen of Honduras who entered the United States in 2014 when he was nine years old.  Pet. at 2.  Petitioner arrived with his sister, who was sixteen years old at the time.  *Id.*  Petitioner was arrested almost immediately after entering the country and was transferred to the custody of the Department of Health and Human Services.  *Id.*  Petitioner was placed in a shelter with the Office of Refugee Resettlement

1

("ORR") and later released to his mother. *Id.* at 3. On April 30, 2026, Petitioner was riding in his sister's car when they were pulled over. *Id.* Border Patrol agents were quickly called, and Petitioner was arrested. *Id.* Petitioner was not accused of any violation, provided any advance notice, or provided an individualized custody determination prior to his re-detention. *Id.* Petitioner has remained in detention since. *Id.*

## LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to 28 U.S.C. § 2241. *See* 28 U.S.C. § 2241(a). The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals. *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)). However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention—federal habeas corpus jurisdiction remains in the district court. *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

## DISCUSSION

Petitioner argues that the summary revocation of his release without justification or consideration of his individualized circumstances violates the Due Process Clause. Pet. at 4–7. The Court agrees.

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (9th Cir. 2001). "[I]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292,

26-CV-3492 JLS (MMP)

306 (1993).  The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property."  *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).  "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty."  *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted).  Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'"  *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).  "Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."  *Id.* (citing *Romero v. Kaiser*, No. 22-cv-20508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022)).

Respondents do not oppose an order directing a bond hearing to be held pursuant to 8 U.S.C. § 1226(a).  Ret. at 2.  The Court finds additional relief appropriate.  Petitioner was released from immigration custody in 2014 and placed in an ORR shelter.  Pet. at 3.  When he was released, he was determined to not be a danger to the community or a flight risk.  *See Garcia Domingo v. Castro*, 806 F. Supp. 3d 1246, 1250 (D.N.M. 2025) ("The statute that governs the detention of unaccompanied minors encountered at the border, the Trafficking Victims Protection and Reauthorization Act ('TVPRA'), provides that, in making custody determinations, ORR should consider 'danger to self, danger to the community, and risk of flight.'") (citing 8 U.S.C. § 1232(c)(2)(A)); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1178 (N.D. Cal. 2017) ("The statute requires ORR to place the unaccompanied minor 'in the least restrictive setting that is in the best interest of the child,' considering, among other things, whether the minor is dangerous." (quoting 8 U.S.C. § 1232(c)(2)(A)).

/ / /

3

Therefore, Petitioner has a protected liberty interest in remaining out of custody. *See, e.g.*, *Pinchi*, 792 F. Supp. 3d at 1034 ("[Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria."); *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1164 (S.D. Cal. 2025) ("Petitioner is not an 'arriving' noncitizen but one that has [been] present in our country for over a year. This substantial amount of time indicates he is afforded the Fifth Amendment's guaranteed due process before removal."); *Alvarenga Matute v. Wofford*, 807 F. Supp. 3d 1120, 1128 (E.D. Cal. 2025) (finding petitioner had a protected liberty interest in his release).

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. *See Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court must apply the *Matthews* factors. *See id.* Courts must consider: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

The Court finds that all three factors support a finding that the Government's revocation of Petitioner's release without notification, reasoning, or an opportunity to be heard, denied Petitioner of his due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to his release. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690. Petitioner has an interest in remaining with his family. *See Morrissey*, 408 U.S. 471 at 482 ("Subject to the conditions of his parole, he can be gainfully employed and

26-CV-3492 JLS (MMP)

is free to be with family and friends and to form the other enduring attachments of normal life.").

Second, the risk of an erroneous deprivation of such interest is high as Petitioner's release was revoked without providing him a reason for revocation or giving him an opportunity to be heard. Pet. at 6. Since DHS's determination that Petitioner should be released because he posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed. *See Saravia*, 280 F. Supp. 3d at 1760 ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings. Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk. . . ." *Id.* "Where as here, 'the petitioner has not received any bond or custody hearing,' 'the risk of an erroneous deprivation of liberty is high' because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025)) (cleaned up).

Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is "low." *See id.* at 1036; *Matute*, 807 F. Supp. 3d at 1130; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Respondents fail to point to any burdens on the Government if it were to have provided proper notice, reasoning, and a pre-deprivation hearing. *See generally* Ret.

Therefore, because Respondents detained Petitioner by revoking his release in violation of the Due Process Clause, his detention is unlawful. *See, e.g.*, *Garcia Domingo*, 806 F. Supp. 3d at 1253–54 (granting a similar challenge based on prior release from ORR

26-CV-3492 JLS (MMP)

custody as a minor); *Torres Sanchez v. Mullin*, No. 26-CV-2957-JLS-AHG, ECF No. 9 at 2 (S.D. Cal. June 16, 2026) (granting release based on similar facts).

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Petitioner's Amended Petition for Writ of Habeas Corpus (ECF No. 6). The Court **ORDERS** Respondents to immediately release Petitioner from custody subject to the conditions of his preexisting release. The Court **ORDERS**, prior to any re-detention of Petitioner, that Petitioner is entitled to notice of the reasons for revocation of his release and a hearing before a neutral decision maker to determine whether detention is warranted. The Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight.[1] The Parties are **ORDERED** to file a Joint Status Report by July 21, 2026, confirming that Petitioner has been released. As this concludes the litigation in this matter, the Clerk **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated: July 15, 2026

Hon. Janis L. Sammartino
United States District Judge

---

[1] This relief has been granted in similar matters. *See, e.g.*, *Matute*, 807 F. Supp. 3d at 1133; *Pinchi*, 792 F. Supp. 3d at 1038; *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1097 (E.D. Cal. 2025); *Martinez Hernandez v. Andrews*, No. 25-CV-1035 JLT HBK, 2025 WL 2495767, at *14 (E.D. Cal. Aug. 28, 2025).

26-CV-3492 JLS (MMP)